## IRWIN *v*. THE TOWN OF ONTARIO.

*(Circuit Court, N. D. New York. July 2, 1880.)*

**1. TOWN BONDS—AFFIDAVIT OF TOWN ASSESSORS.**—In an action by a *bona fide* holder of bonds issued under the act of May 11, 1868, (Laws of New York, 1868, *c.* 811,) as amended by the act of April 19, 1869, (Laws of New York, 1869, *c.* 241,) to aid in the construction of the Lake Ontario Shore Railroad Company, the defendant cannot contradict any of the statutory facts sworn to in the affidavit of the town assessors.

*Phelps* v. *The Town of Lewiston*, 15 Blatchf. C. C. R. 131, followed. *Smith* v. *The Town of Ontario*, 15 Blatchf. C. C. R. 267, distinguished.

**2. PAPERS SEPARATELY FILED AT SAME TIME.**—When such affidavit of the assessors, and other papers prescribed by the statute, were filed separately at the same time, and were attached together when produced on the trial, and were filed as a whole at one and the same time, they will be regarded as having been physically attached together as one whole when they were filed.

**3. RATIFICATION.**—Facts in this case *held* to constitute a ratification of the acts of the officers who issued the town bonds.

Motion for New Trial.

*Albertus Perry*, for plaintiff.

*William F. Cogswell*, for defendant.

BLATCHFORD, C. J. This is a suit against the town of Ontario, to recover the amount of 16 coupons of $35 each, cut off from four bonds of $1,000 each, issued by that town. Four of the coupons fell due April 1, 1877; four October 1, 1877; four April 1, 1878; and four October 1, 1878. Two of the bonds were dated April 1, 1871, and two July 1, 1871. The action was tried before the court and a jury, and the plaintiff had a verdict for the amount of the coupons, $560, and $86.32 interest. A motion is now made for a new trial on a bill of exceptions. The plaintiff proved that he became the purchaser in good faith of the said bonds and coupons before the same became due, for a valuable consideration, by him paid therefor at the time of the purchase thereof. He then offered in evidence a roll of papers from the office of the clerk of the county of Wayne, in which county the town of Ontario is situated, usually called a bonding roll, which consisted of

v.3,no.2—4

sundry papers attached together and marked on the outside thereof as filed and recorded in the office of the clerk of the county of Wayne, on the 23d of December, 1870.

The first paper in the roll was an order of the county judge, of Wayne county, appointing three persons to be railroad commissioners of said town, to carry into effect the provisions of the act of May 11, 1868, (Laws of New York, 1868, c. 811,) authorizing certain towns in certain counties, including Wayne, to issue bonds and take stock in and for the construction of the Lake Ontario Shore Railroad, and of the amendatory act of April 19, 1869. Laws of New York, 1869, c. 241.

The second paper was a verified application of 13 freeholders and residents of said town, to the said county judge, for the appointment of the said three persons to be railroad commissioners for said town, in pursuance of the provisions of said acts.

The third paper was an affidavit, as follows.

"*State of New York, Wayne county, ss.*  John M. Bishop, John Dickerson and Joseph Middleton, being duly sworn, each for himself says that they are the assessors of the town of Ontario, in said county, and that the consent has been obtained, in writing, of persons owning more than one-half of the taxable property assessed, and appearing upon the last assessment roll of said town, and a majority of the tax payers, as appears by said assessment roll, which consent has been proved and acknowledged according to the provisions of an act entitled, 'An act to authorize certain towns in the counties of Oswego, Cayuga and Wayne to issue bonds and take stock in and for the construction of the Lake Ontario Shore Railroad,' passed May 11, 1868, and the act amendatory thereof, passed April 19, 1869, (chapter 241 of Laws of 1869;) that the commissioners of the town of Ontario, appointed to carry into effect the purposes of said act and the act amendatory thereof, are now authorized by the terms of said act, and the act amendatory thereof, to borrow, on the faith and credit of said town of Ontario, the sum of $107,000; and these deponents further say, and each for himself says,

that the said sum of $107,000 does not exceed in amount 25 per cent. of the taxable property assessed and appearing upon the last assessment roll of said town; and these deponents further say, and each for himself says, that they are all of the assessors of said town of Ontario, and that they have now all met together as a board of assessors to perform the duty required of them in and by said act, and the act amendatory thereof.

"J. M. BISHOP,

"JOSEPH MIDDLETON,

"JOHN DICKINSON,

"Assessors.

"Subscribed and sworn to before me this thirtieth day of April, 1870.

"L. R. BOYNTON,

"Justice of the Peace."

This affidavit was marked as filed December 23, 1870. Then followed five papers, usually known as consents of tax payers, which were in all respects alike, and were each signed by sundry tax payers of said town, the signatures to which were verified by an affidavit of a subscribing witness, as hereinafter stated.

The said consents were in the following form:

"Consent of tax payers of the town of Ontario, in the county of Wayne, that said town may issue bonds and take stock in and for the construction of the Lake Ontario Shore Railroad: The undersigned, tax payers of the town of Ontario, in the county of Wayne, state of New York, hereby consent, in writing, that the railroad commissioners appointed for said town of Ontario, in pursuance of the provisions of an act entitled 'An act to authorize certain towns in the counties of Oswego, Cayuga and Wayne to issue bonds and take stock in and for the construction of the Lake Ontario Shore Railroad,' passed May 11, 1868, and the act amendatory thereof, passed April 19, 1869, (chapter 241 of the Laws of 1869,) may borrow, on the faith and credit of the town of Ontario, in said county, the sum of $107,000, that being an amount not exceeding 20 per cent. of the valuation of said town of Ontario, as shown

by the last assessment roll of said town, and may issue bonds therefor, under their hands and seals, in the manner provided in said act and the act amendatory thereof, and may subscribe for and take stock in and for the construction of the Lake Ontario Shore Railroad, for the amount above named."

The affidavits verifying the signatures to said five consent papers were not objected to, except as to the affidavit to one of them, and as to the affidavit to three of the signatures to another of them.

The affidavits objected to were in this form:

"*State of New York, Wayne County, ss.* On this twenty-sixth day of August, 1870, before me appeared personally Alonzo W. Casey, subscribing witness to the above consent, to me known, who, being by me duly sworn, did depose and say that he resided in the town of Ontario, in said county; that he knew the individuals described in and who executed the above consent; that he was present and saw the individuals sign, seal and deliver the same as and for their act and deed, and each and every one of said individuals was informed by this witness of the contents, whereupon the said Alonzo W. Casey became the subscribing witness thereto.

"A. W. CASEY.

"Subscribed and sworn to this twenty-sixth day of August, 1870, before me.

"H. HILL,
"Justice of the Peace."

The affidavit of the assessors, the several assessors, the several consents, and the verifications thereof, were separately and respectively marked on the back thereof, in the handwriting of the county clerk of Wayne county for the time being, or his deputy, as filed in such Wayne county clerk's office December 23, 1870. The counsel for the defendant in due time objected to the introduction of said papers on the ground that the affidavit of the assessors was insufficient, in that it did not state that a majority of the tax payers of said town, as appeared by the last preceding assessment roll, had consented that a debt should be contracted by said town and bonds issued by it; and also that the said affidavit was

wholly defective and insufficient. The objection was over-ruled by the court, and the counsel for the defendant excepted. The counsel for the defendant also objected to reading in evidence the consent of tax payers, with the signatures thereto verified by said Casey, on the ground that such verification did not conform to the statute, in that it did not state that each or any of the persons subscribing such consent informed the said subscribing witness that they knew the contents thereof. The objection was overruled by the court, and the counsel for the defendant excepted. The plaintiff then introduced the assessment roll of the town of Ontario for the year 1869. No question was raised upon it. The counsel for the plaintiff then proved the execution by the railroad commissioners of the bonds and the coupons set forth in the complaint, and that the same were delivered to the Lake Ontario Shore Railroad Company in payment for the subscription for the stock of said company made by such commissioners. The bonds were in all respects alike, except the numbers, and the time when the coupons became due.

The bonds were in this form:

"No. 5.  $1,000.

"United States of America, town of Ontario, county of Wayne, state of New York. Lake Ontario Shore Railroad Company. Issued by virtue of an act of the legislature of the state of New York, entitled 'An act to authorize certain towns in the counties of Oswego, Cayuga, and Wayne, to issue bonds and take stock in and for the construction of the Lake Ontario Shore Railroad,' passed May 11, 1868, (chapter 811 of the Laws of 1868,) and an act amending the same, passed April 19, 1869, (chapter 241 of the Laws of 1869.) These acts authorize any town, incorporated village or city, except the city of Rochester, in either of the counties of Oswego, Cayuga, Wayne, Monroe, Orleans, or the second assembly district of Niagara, situate along the route of the Lake Ontario Shore Railroad, to subscribe for the stock of the Lake Ontario Shore Railroad, and to issue town, village or city bonds in payment therefor.

"*Know all men by these presents,* that we, the undersigned

commissioners under the above-entitled act for the town of Ontario, in the county of Wayne and state of New York, upon the faith and credit and in behalf of said town, for value received, promise to pay to the bearer the sum of $1,000, on the first day of April, in the year one thousand, eight hundred and seventy-nine, at the American Exchange National Bank, in the city of New York, with interest at 7 per cent. per annum, payable semi-annually on the first days of April and October in each year, at the same place, on the presentation and surrender of the coupons for such interest hereto annexed.

"In witness whereof we have hereunto set our hands and seals, and have caused the coupons hereto annexed to be signed by H. Hill, one of our members, this first day of November, in the year one thousand eight hundred and seventy-one.

"Hezekiah Hill, [L. s.]

"A. W. Casey, [L. s.]

"L. R. Boynton, [L. s.]

Commissioners."

The coupons were in this form:

"$35.                    Town of Ontario.

"The American Exchange National Bank of the city of New York will pay the bearer $35 on the first day of April, 1875, being semi-annual interest due on bond No. 5.

H. Hill, Commissioner."

It appeared, by a comparison of the assessment roll with the so-called bonding roll, that, exclusive of the tax payers who had subscribed the consent so verified by said Casey, the total number of tax payers consenting was less than a majority of the total number of tax payers as appeared by the last preceding assessment roll. The plaintiff proved the incorporation of the railroad company; that it had constructed the railroad; that the same was now in operation, and that the defendant paid the interest on its bonds for three years after its bonds were issued. The plaintiff then proved the amount due on the coupons set forth in the complaint, and rested. The defendant then offered to

prove, by the assessors who made the foregoing affidavit of August 30, 1870, (one of whom was called by the defendant and sworn as a witness,) that at the time when said affidavit was so subscribed and sworn to by them the same was on a separate sheet of paper, unattached to any of the consents of the tax payers, or any other paper, and that none of such consents were present at the time of such subscription and verification. The plaintiff objected to the evidence, and it was excluded by the court, and the defendant excepted. The defendant then offered to prove that the total number of persons subscribing such consents, as appeared by said bonding roll, was less than one-half of the tax payers of said town, as appeared by said assessment roll. The plaintiff objected to such evidence on the ground that it was immaterial, and the court excluded it, and the defendant excepted. The defendant then rested. The defendant then requested the court to instruct the jury to render a verdict for the defendant, on the ground that the affidavit of the assessors did not comply with the statute in the respect before set forth, and also on the ground that it appeared, by a comparison of the names on the said so-called bonding roll with the names of the tax payers in the said assessment roll, that a majority of the tax payers of said town had not given their consent that any debt should be contracted by said town, or bonds issued by it, according to the requirements of the statute. The motion was reserved by the court, and the defendant excepted. The court instructed the jury to render a verdict for the plaintiff for the amount of said coupons and interest, to which instruction the defendant excepted.

The verdict before named was then rendered.

The act of May 11, 1868, (Laws of New York, 1868, *c.* 811,) as amended by the act of April 19, 1869, (Laws of New York, 1869, *c.* 241,) provides in section 1 for the appointment of railroad commissioners for the town by the county judge. Section 2 is as follows: "It shall be lawful for said commissioners to borrow, on the faith and credit of their respective towns, incorporated villages, and cities aforesaid, such sums of money, not exceeding 20 per cent. of the valua-

tion of said town, incorporated village, or city, to be ascertained by the last assessment rolls thereof respectively, for a term not exceeding 25 years, at a rate of interest not exceeding 7 per cent. per annum, and to execute bonds therefor under their hands and seals respectively." The bonds so to be executed may be in such sums, not exceeding the sums set forth in the consent of the tax payers of said corporations, and payable at such times and places, not exceeding 25 years, and in such form, as said commissioners may deem expedient; but no such debt shall be contracted or bond issued by said commissioners of or for either of said towns, incorporated villages, or cities, until consent, on or before January 1, 1871, in writing, proved by a subscribing witness, who shall swear, in addition to the ordinary form of affidavits of subscribing witnesses, that the party executing informed the witness that he knew the contents thereof, or acknowledged as provided for conveyances of real estate, shall first have been obtained of persons owning more than one-half of the taxable property assessed, and appearing upon the last assessment roll of said town, incorporated village, or city, and a majority of the tax payers as appears by such assessment rolls respectively, and such fact shall be proved by the affidavits of the assessors, or a majority of them, of such towns, incorporated villages, or cities, respectively; and it shall be the duty of such assessors, and they be hereby authorized, to make such affidavit when the said consent shall be obtained. Said affidavit and consent, and a copy of the assessment roll, shall be filed in the clerk's office in the respective counties, and certified copies thereof in the town clerk's office of each of the said towns respectively, and the same, or a certified copy thereof, shall be evidence of the facts therein contained and certified, in any court of the state, and before any judge or justice thereof."

Section 3 of the act of 1868 authorizes the commissioners to dispose of the bonds to such persons or corporations, and upon such terms, as they shall deem most advantageous for their said town, incorporated village or city, but for not less than par, and proposes that the money that shall be raised

by any loan or sale of bonds shall be invested in the stock of said company, of the Lake Ontario Shore Railroad, and the commissioners, in the corporate name of the town, may subscribe for the stock of such company to the amount so borrowed, and that, on receiving certificates for the amount of stock so subscribed for, the town shall acquire all the rights of the stockholders of the company. Section 4 of the act of 1869 provides that the commissioners of any town may issue the bonds directly to the directors of the railroad company at not less than their par value, and receive in exchange therefor the stock of the company at not more than par.

These statutes in regard to the bonding of towns in aid of the Lake Ontario Shore Railroad Company were under consideration by me in the case of *Phelps* v. *The Town of Lewiston*, 15 Blatchf. C. C. R. 131–153, and it was there said:

"The second section of the act of 1868, as amended by the second section of the act of 1869, provides that the fact that the prescribed consent in writing of the tax payers, proved or acknowledged as provided, has first been obtained, shall be proved by the affidavit of the assessors, or a majority of them, of the town; that it shall be the duty of the assessors to make the affidavit when the consent shall be obtained; that the affidavit and consent, and a copy of the assessment roll, shall be filed in the county clerk's office, and that the same, or a careful copy thereof, shall be evidence of the facts therein contained, and certified in any court of the state. As the commissioners are to issue the bonds, the meaning of the statute is that the affidavits of the assessors, or a majority of them, that the prescribed consent in writing, proved or acknowledged as provided, has been obtained, shall be proof to the commissioners of such fact, so as to authorize the issuing of the bonds, without its being necessary for the commissioners to examine the question further, and that the affidavit, or a certified copy of it, as filed, shall be evidence of such fact in any court of the state. Under this provision such an affidavit of the assessors must be held to be proof of such fact sufficient to protect a *bona fide* holder of the bonds for a valuable consideration, without notice, without its being

necessary for him to examine further into the question as to whether the condition precedent has been complied with. Undoubtedly there must be statute authority for the issue of the bonds, and the provisions of the statute must be followed. A purchaser of the bonds, even though a *bona fide* purchaser, is referred by the bonds themselves to the terms of the stat- ute. He there finds it enacted that the bonds may be issued by the commissioners if the consent in writing, as proved or acknowledged as provided, of tax payers of the town, to a specified number and amount, is first obtained, and that the affidavit of the assessors to that fact shall be proof of that fact for the action of the commissioners.

"Although the authority of the commissioners to issue the bonds is made dependent on the condition that the required consent of the tax payers shall be first obtained, yet it is equally clear that the commissioners who are to issue the bonds are to ascertain and determine before issuing the bonds that the required consent has been obtained, by receiving, as proof thereof, the affidavit of the assessors to the fact. The duty of ascertaining whether the prescribed consent has been obtained is plainly vested by the statute in commissioners, and the form and nature of the evidence they are to act on as evidence of the fact are prescribed. The fact of the issue of the bonds shows that they ascertained and determined that the condition prescribed had been complied with, and although the bonds do not, on their faces, refer in terms to the neces- sity or the fact of the consent, no *bona fide* purchaser of the bonds can be required to go back further than the affidavit to which the statute refers as proof. It was made the duty of the commissioner to determine on special evidence whether the statutory prerequisite to an authorized issue of the bonds had been complied with, and it was also made their duty to issue the bonds in the event of such compliance. The case in these respects is within the principles laid down in *The Town of Coloman* v. *Eaves*, 92 U. S. 484."

In the case of *Phelps* v. *The Town of Lewiston* the affidavit of the assessors was in all essential respects in the same words of the affidavits of the assessors in the present case. In that

case the affidavit and the consents, and the proofs and acknowl-
edgments attached together, were, with a copy of the assess-
ment roll of the town for the year 1869, filed in the office of
the clerk of the county on the tenth of September, 1870. In
the present case the application to the county judge and his
order, and the affidavit of the assessors, and the consent and
the proof of the signatures to the consents, these papers,
constituting the bonding roll, were, when produced in evidence
at the trial from the office of the county clerk, attached together,
and were marked on the outside as being filed and recorded
in the office of the clerk of the county on the twenty-third
of December, 1870. This means that they were filed at one
and the same time, as constituting by the sum of their parts
one paper, or bonding roll, those parts being parts of one and
the same proceeding. In addition to this the affidavit of the
assessors, and each consent, and each proof of the signatures
to the consents, was separately marked by the proper officers
as filed in the county clerk's office on the twenty-third of
December, 1870, the day of the filing of the whole as a
whole.

As the affidavit of the assessors, and the consents, and the
proof of the signatures to the consents, were so filed separately
at the same time, and were attached together when produced
on the trial, and were filed as a whole at one and the same
time, it necessarily follows that they must be regarded as hav-
ing been physically attached together as one whole when
they were filed. This makes the case like that of *Phelps* v.
*The Town of Lewiston.* It is of no consequence that it might
have been shown that the affidavit, when it was subscribed
and sworn to by the assessors, was on a separate sheet of
paper, unattached to the consents, and that none of the
consents were present when the affidavit was subscribed and
sworn to. Such evidence would not show, or tend to show,
that the consents referred to in the affidavit were not the con-
sents filed with the affidavit. In regard to such form of affi-
davit it was said, in *Phelps* v. *The Town of Lewiston*: "But
it is contended the affidavit of the assessor is defective. The
affidavit is shown by the evidence to have been attached to

the consent papers when the two were filed together in the county clerk's office. The affidavit states that the consent in writing has been obtained of persons owning, etc., 'which consent has been proved and acknowledged according to the provisions' of the two acts, specifying them definitely. It does not state otherwise what the consent is to be for or about. But in view of the attachments of the consents to the affidavit, and of the contents of the affidavit, and of the contents of the consents, it must be held that the 'consent' referred to in the affidavit is sufficiently designated therein as being the consent referred to in the statute and the consent specified in the consent papers." In so far as any views expressed in *Smith* v. *The Town of Ontario*, 15 Blatchf. C. C. R. 267, by Judge Wheeler, differ from those expressed by me in *Phelps* v. *The Town of Lewiston*, it is to be remarked that the decision in the Phelps case was made prior to the decision in the Smith case, and that the decision in the Phelps case does not appear to have been brought to the notice of the court before the Smith case was decided.

The Phelps case was decided in August, 1878, and the Smith case in September, 1878. In October, 1879, the Smith case was again brought before Judge Wheeler, after the judgment for the defendant in the case for costs had been paid and satisfied, and he was asked leave to re-argue a motion for a new trial in the case. He denied the case for want of power, although the Smith suit was a suit against the same town as the present suit, and was founded on the same bonding proceedings and the same issue of bonds; yet it appears, from the last decision filed in the Smith case, that the record on which the action for a new trial in that case was had showed that some of the consents were filed in the county clerk's office on different days from others, in December, 1870, and that the affidavit was filed there at sometime in that month, without showing on what day, and that when the application for leave to re-argue the motion for a new trial was made it still appeared that the affidavit and each consent was filed separately, as if it came from dif-

ferent sources from the others, before the affidavit and consents were filed together as one roll. A different state of facts appears in this case. Here, it appears that the affidavit and each consent, and each proof of the signatures to the consents, was filed on the same day on which the whole roll containing all of those papers was filed as a whole. If they were all filed at one and the same time, each separately, and then as a whole, they were, in judgment of law, attached together, as much as if physically attached by material means. This case is, therefore, brought fully within the decision in the Phelps case, and to which I adhere, and it is unlike the Smith case.

The consents being thus to be considered as being the consent referred to in the affidavit, are found to be consents to borrowing the money and issuing the bonds, and subscribing for the stock.

The fact which the statute says is to be proved by the affidavit of the assessors, and which affidavit it is made by the statute their duty to make, is the fact that the consent in writing, proved or acknowledged in the manner prescribed by the statute, has been obtained of persons owning more than one-half of the taxable property, and of a majority of the tax payers. This includes not only the fact of consent, and of consent in writing, and of consent of the requisite persons and of the requisite majority, but that the consent has been proved or acknowledged in the prescribed manner.

The affidavit of the assessors in the present case, in connection with the consents, fully complies with the statute, and must be received in this case as proof to the commissioners of everything required for the issue of the bonds. It concludes the question, as against this plaintiff as a *bona fide* holder, as to the form of the proof of the signatures to the consents, because it finds the fact that the proof was according to the provisions of the statute. It was, therefore, not open to the defendant as against this plaintiff to contradict any of the statutory facts sworn to in the affidavit. It was not open to it to object to the sufficiency of the affidavit, or to the sufficiency of the proof of the signatures to the consents,

or to go into an arithmetical computation as to whether the required consents had in fact been given, as to value or number. No error was committed at the trial, and all the exceptions taken by the defendant must be overruled.

In addition to the foregoing considerations, it appears that the bonds and the coupons were delivered to the railroad company in payment for the subscription made by the commissioners to the stock of the company, as authorized by section 4 of the act of 1869. This made the town a stockholder in the company, and it must be assumed that the commissioners did their duty, and that the town received the stock and has retained it, in the absence of any statement to the contrary, though the bill of exceptions is silent on that point. But it does appear that the road has been built and put in operation, and that the defendant paid the interest on its bonds for three years after they were issued. Under the cases of *Supervisors* v. *Schenck*, 5 Wall. 772; *Penn. C. Co.* v. *Amy*, 13 Wall. 297, and *Commissioners* v. *January*, 94 U. S. 202, it must be held that, as against the plaintiff, as a *bona fide* holder, the town has ratified with full knowledge by the record of the alleged defects, the acts of those who issued the bonds.

The motion for a new trial is denied, and the stay of proceedings is vacated, and judgment is ordered for the plaintiff on the verdict.